**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 23-CR-74 (RCL)** |
| **GREGORY BOURNES JR. and**<br>**DREAM JACKSON,** | |
| **Defendants.** | |

### UNITED STATES' OMNIBUS MEMORANDUM IN AID OF SENTENCING

Between February 2021 and February 2022, Defendants Gregory Bournes Jr., and Dream Jackson purchased over 80 firearms from licensed dealers in the States of Georgia and Texas with the intent of unlawfully reselling them for profit. They brought many of those guns into the Washington metropolitan area and put them into the hands of people that they knew or should have known were criminals. The defendants engaged in their trafficking scheme as violent crime in the District of Columbia was rising sharply, and their conduct necessarily contributed to that increase. To date, 34 firearms trafficked by the defendants have been recovered by law enforcement: nine of those 34 guns are alleged to have been used in shootings, with one firearm having been used in *seven* incidents in the District of Columbia, including four shootings an armed carjacking, and another firearm having been used in an attempted murder in Prince George's County. Another two firearms have been recovered in connection with homicide investigations in Maryland and California. Most of the firearms charged in this case—49 of them—remain on the street, so the harm they have caused and will continue to cause remains unknown. For reasons that follow, the government respectfully recommends that this Court sentence each defendant to a term of **30 months' imprisonment** to be followed by three years' supervised release. In support of its recommendation, the government respectfully submits this Memorandum in Aid of Sentencing.

## FACTUAL BACKGROUND

### *The Offense Conduct*

The factual proffer to which the defendants agreed as part of their October 5, 2023, guilty plea (ECF No. 42) establishes the following uncontested facts:

Beginning in or around February 2021, and continuing through at least February 19, 2022, in the District of Columbia and elsewhere, Defendants Gregory Bournes Jr. and Dream Jackson, along with other known and unknown individuals, knowingly and willfully conspired to obtain firearms from licensed firearms dealers in the States of Georgia and Texas, and to transfer and transport these firearms to the District of Columbia and elsewhere, for the purpose of unlawfully reselling these firearms for profit.

It was part of the conspiracy that, beginning on or about February 8, 2021, and continuing through at least February 16, 2022, Defendants Bournes Jr. and Jackson engaged in a pattern of purchasing firearms from licensed dealers in the States of Georgia and Texas.  It was further part of the conspiracy that, during approximately the same period, Defendants Bournes Jr. and Jackson agreed to engage in financial transactions to trade the firearms they acquired for money, traveling over state lines to complete those transactions.  Throughout the course of the conspiracy, both Defendants Bournes Jr. and Jackson regularly communicated with other individuals (and each other) about unlawfully selling firearms to those other individuals for profit.  Neither Defendant Bournes Jr. nor Jackson is a licensed firearms dealer.

At a trial, the government would have proven at least the following overt acts taken by the defendants in furtherance of the conspiracy and in order to effect the objects thereof:

a.        On or about February 8, 2021, Defendant Jackson purchased a Glock 19, 9mm pistol bearing serial number AFDL813 from Garretts Sporting Goods, located in Texas.

b.      On or about February 9, 2021, Defendant Jackson purchased (1) a Glock 44, .22 LR caliber pistol bearing serial number AERY666; (2) a Smith & Wesson M&P 40 Shield, .40 caliber pistol bearing serial number JHS2834; (3) a Stoeger STR 9C, 9mm pistol bearing serial number T6429-20S05057; and (4) a Taurus G3, 9mm pistol bearing serial number ACA439262, all from Superior Outfitters, located in Texas.

c.      On or about February 11, 2021, Individual-1 contacted Defendant Jackson via Facebook Messenger to inquire about purchasing firearms from her, and Defendant Jackson indicated that she had firearms available for sale.

d.      On or about February 12, 2021, Defendant Jackson and Defendant Bournes Jr. communicated via text message about selling firearms to Individual-1.  Individual-1 provided Defendant Jackson with his cell phone number.

e.      Between on or about April 5, 2021, and April 7, 2021, Defendant Jackson again corresponded with Individual-1 via Facebook Messenger about selling firearms to Individual-1.

f.      On or about April 7, 2021, Defendant Jackson and Defendant Bournes Jr. again communicated via text message about selling firearms to Individual 1.

g.      On or about April 7, 2021, Defendant Jackson exchanged numerous text messages with Individual-1.

h.      On or about April 8, 2021, Defendant Jackson was present in the area of Individual-1's residence in the District of Columbia.

i.      On or about May 30, 2021, Defendant Jackson purchased (1) a Smith & Wesson SD9VE, 9mm pistol bearing serial number FDC6464; (2) a Springfield XDS, 9mm pistol bearing serial number BA215744; (3) a Mossberg MC2c, 9mm pistol bearing serial number 001587MC; (4) a Canik TP-9SF, 9mm pistol bearing serial number 21AT12478; and (5) a Glock 17, 9mm

pistol bearing serial number BTAX660, all from Spring Guns & Ammo, located in Texas; and also purchased (6) a Glock 44, .22 LR caliber pistol bearing serial number AFHW564; (7) a Glock 30S, .45 caliber pistol bearing serial number BTHY300; (8) a Taurus G3, 9mm pistol bearing serial number ACD781281; (9) a Springfield XD9, 9mm pistol bearing serial number BA375222; and (10) a Smith & Wesson SD40VE, .40 caliber pistol bearing serial number FDF9818, all from Carter's County #1, located in Texas.

j.      On or about July 12, 2021, Defendant Bournes Jr. purchased an FN 509, 9mm pistol bearing serial number GKS0206823 from Range, Guns & Safes, located in Georgia.

k.      Between on or about July 13, 2021, and July 20, 2021, Defendant Bournes Jr. purchased an FN 503, 9mm pistol bearing serial number CV016465 from Range, Guns & Safes, located in Georgia.

l.      Between on or about July 14, 2021, and July 20, 2021, Defendant Bournes Jr. purchased a Springfield XD-S, 9mm pistol bearing serial number BA343226 from Academy Sports #260, located in Georgia.

m.      Between on or about August 1, 2021, and August 3, 2021, Defendant Bournes Jr. purchased a Glock 19, 9mm pistol bearing serial number BSXL977 from Academy Sports #107, located in Georgia.

n.      Between on or about August 12, 2021, and August 13, 2021, Defendant Jackson purchased a Glock 29, 10mm pistol bearing serial number BTDT236 from Adventure Outdoors, located in Georgia.

o.      On or about August 14, 2021, Defendant Bournes Jr. exchanged text messages with Individual-5 about selling firearms to Individual-5.

p.      On or about August 17, 2021, Defendant Jackson purchased an FN 509, 9mm pistol bearing serial number GKS0223631, from Mainstreet Guns & Range, located in Georgia.

q.      Between on or about August 17, 2021, and August 18, 2021, Defendant Bournes Jr. purchased a Glock 19, 9mm pistol bearing serial number BPED527 from Mainstreet Guns & Range, located in Georgia.

r.      Between on or about September 1, 2021, and September 3, 2021, Defendant Jackson purchased a Glock 29, 10mm pistol bearing serial number BUDD300 from Adventure Outdoors, located in Georgia.

s.      On or about September 3, 2021, Defendant Bournes Jr. purchased a Glock 43X, 9mm pistol bearing serial number BUER314 from Adventure Outdoors, located in Georgia.

t.      Between on or about September 10, 2021, and September 14, 2021, Defendant Bournes Jr. purchased an American Tactical omni, .223 caliber pistol bearing serial number NS298300 from Mainstreet Guns & Range, located in Georgia.

u.      On or about September 13, 2021, Defendant Jackson and Defendant Bournes Jr. communicated via text message about selling firearms to Individual-1.

v.      Between on or about September 13, 2021, and September 15, 2021, Defendant Bournes Jr. purchased a Glock 19, 9mm pistol bearing serial number BUAU994 from Academy Sports #260, located in Georgia.

w.      Between on or about September 15, 2021, and September 20, 2021, Defendant Bournes Jr. purchased a Smith & Wesson SD40VE, .40 caliber pistol bearing serial number FDK0542 from Academy Sports #107, located in Georgia.

x.      Between on or about September 16, 2021, and September 20, 2021, Defendant Jackson purchased a Glock 19, 9mm pistol bearing serial number BUNX681, and Defendant

Bournes Jr. purchased a Glock 19, 9mm pistol bearing serial number BTXH373, both from Bullseye Indoor Range & Gun Shop, located in Georgia.

y.      Between on or about September 24, 2021, and September 25, 2021, Defendant Bournes Jr. and Defendant Jackson traveled from Georgia, where they then resided, to the District of Columbia area.  During this time, both Defendant Bournes Jr. and Defendant Jackson exchanged numerous text messages with Individual-1, who resides in the District of Columbia.

z.      Between on or about September 24, 2021, and September 27, 2021, Defendant Bournes Jr. exchanged text messages with Individual-5 about selling firearms to Individual-5.

aa.      Between on or about September 29, 2021, and September 30, 2021, Defendant Bournes Jr. purchased (1) a Kel-Tec CP33, .22 LR caliber pistol bearing serial number MGC43; and (2) a Glock 17, 9mm pistol bearing serial number ABPC908, both from Academy Sports #260, located in Georgia.

bb.      Between on or about September 30, 2021, and October 4, 2021, Defendant Bournes Jr. purchased (1) a Ruger 57, 5.7x28mm pistol bearing serial number 643-38382; and (2) a Glock 23, .40 caliber pistol bearing serial number BLLZ239, both from Bullseye Indoor Range & Gun Shop, located in Georgia.

cc.      On or about October 5, 2021, Defendant Bournes Jr. sent text messages to Defendant Jackson indicating that he intended to file a false renter's insurance claim premised on a fabricated burglary of their shared residence.

dd.      On or about October 6, 2021, Defendant Bournes Jr. reported a burglary to the DeKalb County Police Department.  Defendant Bournes Jr. falsely reported that, among other items, four firearms had been stolen: (i) the Glock 19 bearing serial number BUNX681, which Defendant Jackson had purchased between on or about September 16, 2021, and September 20,

2021 (and which was later recovered from Individual-6—who is a relative of Individual-1—in Prince George's County, Maryland, on or about December 4, 2021); (ii) the Glock 19 bearing serial number BTXH373, which Defendant Bournes Jr. had purchased between on or about September 16, 2021, and September 20, 2021; (iii) the Smith & Wesson SD40VE bearing serial number FDK0542, which Defendant Bournes Jr. had purchased between on or about September 15, 2021, and September 20, 2021; and (iv) the Glock 17 bearing serial number BUAU994, which Defendant Bournes Jr. had purchased between on or about September 13, 2021, and September 15, 2021.

ee.     On or about October 7, 2021, Defendant Bournes Jr. purchased a Ruger 57, 5.7x28mm pistol bearing serial number 643-39445 from Bullseye Indoor Range & Gun Shop, located in Georgia.

ff.     Between on or about October 7, 2021, and October 8, 2021, Defendant Bournes Jr. purchased (1) a Glock 19, 9mm pistol bearing serial number BUAU975; and (2) a Glock 26, 9mm pistol bearing serial number BUST426, both from Academy Sports #257, located in Georgia.

gg.     On or about October 12, 2021, Defendant Bournes Jr. purchased a Glock 31, .357 SIG caliber pistol bearing serial number BUGC216, from Mainstreet Guns & Range, located in Georgia.

hh.     On or about October 14, 2021, Defendant Bournes Jr. purchased a Glock 23, .40 caliber pistol bearing serial number UXL993, from Adventure Outdoors, located in Georgia.

ii.     On or about October 19, 2021, Defendant Bournes Jr. purchased a Glock 30S, .45 caliber pistol bearing serial number WZE421 from Dead Center Indoor Gun Range, located in Georgia.

jj.     Between on or about October 19, 2021, and October 20, 2021, Defendant Bournes Jr. purchased a Glock 27, .40 caliber pistol bearing serial number BUSU200 from Academy Sports #257, located in Georgia.

kk.     On or about October 26, 2021, Defendant Bournes Jr. communicated with Individual-2 via text message about selling firearms to Individual-2, Individual-3, and Individual-4.   Defendant Bournes Jr. indicated that he was in a store purchasing firearms. Defendant Bournes Jr. at first indicated that he had obtained a "Sccy 9" for Individual-3 and a "Ruger 9" for Individual-4, but then indicated he would sell the Ruger to Individual-2 and an "FN" to Individual-4.  Defendant Bournes Jr., who was at the time in Georgia, proposed that Individual-2 meet him the next day in Lanham, Maryland, to complete the transaction.

ll.     On or about October 26, 2021, Defendant Bournes Jr. also communicated with Individual-4 via text message about selling firearms to Individual-4.

mm.     On or about October 26, 2021, Defendant Bournes Jr. purchased (1) a Ruger Security-9, 9mm pistol bearing serial number 384-82393, and (2) a SCCY CPX-2, 9mm pistol bearing serial number C178361, both from Adventure Outdoors, located in Georgia.

nn.     On or about October 27, 2021, Defendant Bournes Jr. communicated with Individual-2 via text message about meeting with Individual-2 and Individual-4 in Lanham, Maryland.   Defendant Bournes Jr. traveled to Lanham, Maryland, consistent with the text conversation.

oo.     On or about October 31, 2021, Defendant Bournes Jr. purchased (1) a Glock 19, 9mm pistol bearing serial number BUAP841; and (2) a Glock 43X, 9mm pistol bearing serial number BUVG216, both from Duncan & Company, located in Georgia.

pp.     Between on or about October 31, 2021, and November 16, 2021, Defendant Bournes Jr. purchased a Glock 26, 9mm pistol bearing serial number BUST186 from Academy Sports #192, located in Georgia.

qq.     On or about November 1, 2021, Defendant Bournes Jr. purchased a Glock 23, .40 caliber pistol bearing serial number BUCV360 from Dead Center Indoor Gun Range, located in Georgia.

rr.     On or about November 2, 2021, Defendant Bournes Jr. purchased a Glock 30, .45 caliber pistol bearing serial number VHM940 from Appalachian Outfitters GA, located in Georgia.

ss.     On or about November 12, 2021, Defendant Bournes Jr. purchased (1) a Glock 27, .40 caliber pistol bearing serial number SEB098; and (2) a Glock 17, 9mm pistol bearing serial number BUGR904, both from Mainstreet Guns & Range, located in Georgia.

tt.     Between on or about November 12, 2021, and November 16, 2021, Defendant Jackson purchased a Glock 19, 9mm pistol bearing serial number BUAR602 from Mainstreet Guns & Range, located in Georgia.

uu.     On or about November 13, 2021, Defendant Bournes Jr. communicated with Individual-4 via text message about selling firearms to Individual-4.

vv.     Between on or about November 13, 2021, and November 18, 2021, Defendant Bournes Jr. communicated with Individual-5 via text message about selling firearms to Individual-5.  In the course of these communications, Defendant Bournes Jr. revealed to Individual-5 that he was present in the District of Columbia.

ww.     On or about November 17, 2021, Defendant Bournes Jr. purchased a Shadow Systems MR920, 9mm pistol bearing serial number SSC058035 from Adventure Outdoors, located in Georgia.

xx.     On or about November 20, 2021, Defendant Bournes Jr. purchased a Glock 19, 9mm pistol bearing serial number BUPA702 from Academy Sports #257, located in Georgia.

yy.     On or about November 24, 2021, Defendant Bournes Jr. purchased a Glock 19X, 9mm pistol bearing serial number BKCC860 from Adventure Outdoors, located in Georgia.

zz.     On or about November 26, 2021, Defendant Bournes Jr. purchased (1) a Glock 32, .357 SIG caliber pistol bearing serial number BVAY574 from Bullseye Indoor Range and Gun Shop, located in Georgia; and (2) a Glock 27, .40 caliber pistol bearing serial number BTZK866 from Mainstreet Guns & Range, located in Georgia.

aaa.    On or about November 27, 2021, Defendant Bournes Jr. purchased a Glock 23, .40 caliber pistol bearing serial number BUWH673 from Academy Sports #257, located in Georgia.

bbb.    On or about December 4, 2021, Defendant Bournes Jr. purchased a Glock 32, .357 SIG caliber pistol bearing serial number BDWT284 from Adventure Outdoors, located in Georgia.

ccc.    On or about December 7, 2021, Defendant Bournes Jr. purchased (1) a Ruger 57, 5.7x28mm pistol bearing serial number 642-01520, from Bullseye Indoor Range & Gun Shop, located in Georgia; and (2) a Glock 26, 9mm pistol bearing serial number BUKT198 from Mainstreet Guns & Range, located in Georgia.

ddd.    On or about January 11, 2022, Defendant Bournes Jr. purchased (1) a Glock 26, 9mm pistol bearing serial number AFSF626; and (2) a Glock 36, .45 caliber pistol bearing serial number BABL383, both from Adventure Outdoors, located in Georgia.

eee.    On or about January 15, 2022, Defendant Bournes Jr. purchased a Glock 48, 9mm pistol bearing serial number BVXR372 from Academy Sports #118, located in Georgia.

fff.    On or about January 18, 2022, Defendant Bournes Jr. purchased a Glock 23, .40 caliber pistol bearing serial number EXR994US from Adventure Outdoors, located in Georgia.

ggg.    On or about January 21, 2022, Defendant Bournes Jr. purchased (1) a Glock 30, .45 caliber pistol bearing serial number BUSW378; and (2) a Glock 17, 9mm pistol bearing serial number VPU794, both from Adventure Outdoors, located in Georgia.

hhh.    On or about January 27, 2022, Defendant Bournes Jr. purchased (1) a Glock 20, 10mm pistol bearing serial number BVKU918 from Bass Pro Shops #038, located in Georgia; and (2) a Glock 29, 10mm pistol bearing serial number BVLL918 from Arrowhead Pawn, located in Georgia.

iii.    On or about February 1, 2022, Defendant Bournes Jr. purchased (1) a Glock 30, .45 caliber pistol bearing serial number BVLN417 from Bass Pro Shops #038, located in Georgia; and (2) an HK 416, .22 LR caliber pistol bearing serial number HB053146 from Arrowhead Pawn, located in Georgia.

jjj.    On or about February 4, 2022, Defendant Bournes Jr. purchased (1) a Glock 43, 9mm Luger caliber pistol bearing serial number AGAA984, and (2) a Glock 29, 10mm pistol bearing serial number BVYA562, both from Cabela's #457, located in Georgia.

kkk.    On or about February 5, 2022, Defendant Bournes Jr. purchased a Glock 30, .45 caliber pistol bearing serial number FTV875 from Adventure Outdoors, located in Georgia.

lll.    On or about February 7, 2022, Defendant Bournes Jr. purchased a Glock 23, .40 caliber pistol bearing serial number AFZH391 from Dead Center Indoor Gun Range, located in Georgia.

mmm. On or about February 8, 2022, Defendant Bournes Jr. purchased (1) a Glock 17, 9mm pistol bearing serial number BWAD468, and (2) a Century Arms Draco NAK9, 9mm pistol bearing serial number RON2163255, both from Dead Center Indoor Gun Range, located in Georgia.

nnn.     On or about February 9, 2022, Defendant Bournes Jr. purchased a Springfield XDM, .40 caliber pistol bearing serial number MG308736 from Adventure Outdoors, located in Georgia.

ooo.     Between on or about February 9, 2022, and February 15, 2022, Defendant Jackson purchased a Glock 30, .45 caliber pistol bearing serial number 1EPW987US from Adventure Outdoors, located in Georgia.

ppp.     On or about February 11, 2022, Defendant Bournes Jr. purchased a Glock 19, 9mm pistol bearing serial number BSXW725 from Appalachian Outfitters GA, located in Georgia.

qqq.     On or about February 15, 2022, Defendant Bournes Jr. purchased (1) a Glock 30, .45 caliber pistol bearing serial number 1EPW970US; and (2) a Glock 23, .40 caliber pistol bearing serial number BDNN697, both from Adventure Outdoors, located in Georgia.

rrr.     On or about February 16, 2022, Defendant Bournes Jr. purchased (1) a Glock 27, .40 caliber pistol bearing serial number ZPD897, from Adventure Outdoors, located in Georgia; and (2) a Glock 29, 10mm pistol bearing serial number BWEN414 from Arrowhead Pawn, located in Georgia.

sss.     On or about February 19, 2022, Defendant Bournes Jr. traveled from Georgia to Alexandria, Virginia, where he met with Individual-4.  Defendant Bournes Jr. was in possession of five firearms purchased in Georgia within the prior three weeks: (i) the Glock 27 bearing serial number ZPD897, which Defendant Bournes Jr. had purchased on or about February 16, 2022; (ii) the Glock 19 bearing serial number BSXW725, which Defendant Bournes Jr. had purchased on or about February 11, 2022; (iii) the Springfield XDM bearing serial number MG308736, which Defendant Bournes Jr. had purchased on or about February 9, 2022; (iv) the Glock 17 bearing serial number BWAD468, which Defendant Bournes Jr. had purchased on or about February 8,

2022; and (v) the HK 416 bearing serial number HB053146, which Defendant Bournes Jr. had purchased on or about February 1, 2022.

### The Defendants' Acknowledgements

As part of their guilty pleas, the defendants made the following acknowledgements: (1) they conspired to, and did, transfer firearms to other individuals for money; (2) they conspired to, and did, engage in the business of dealing in firearms and in so doing showed a willingness to deal, a profit motive, and a greater degree of activity than the occasional sales of a hobbyist; (3) neither is or has ever been a licensed firearm dealer, importer, manufacturer, or collector—and neither is otherwise lawfully entitled or approved to deal in firearms; (4) in furtherance of their goal to engage in the business of dealing in firearms without a license, they conspired to, and did, (a) travel from one State into another State for the purpose of acquiring firearms in such other State, and (b) transported firearms in interstate commerce; (5) they each knew or had reason to believe that their conduct would result in prohibited persons receiving firearms; and (6) at all relevant times, they each acted voluntarily and on purpose, not by mistake or accident.

### Law Enforcement Recoveries of Firearms

Beginning in January 2022, law enforcement began investigating the recovery of multiple firearms in the District of Columbia and elsewhere that were purchased by Bournes Jr. and Jackson in Georgia and Texas.  Law enforcement reviewed Firearms Trace Summaries and police paperwork related to the recovery of 34 firearms:  24 of which Bournes Jr. had purchased in Georgia and 10 of which Jackson had purchased in Georgia and Texas.  Of these 34 firearms, 16 were recovered in the District of Columbia; 15 were recovered in Maryland (12 in Prince George's County and one in each of Calvert, Montgomery, and St. Mary's Counties); and three were recovered in California.  It has been determined that nine of the firearms were used in shootings,

and an additional two firearms were recovered in connection with homicide investigations.  An overview of the recovered firearms follows.

1.      On July 21, 2021, the Prince George's County Police Department recovered a Glock 30S, .45 caliber pistol, serial number ("s/n") BTHY300 in the possession of an individual. The Firearms Trace Summary indicated the firearm was obtained by Jackson on May 30, 2021, 52 days prior, in Texas.

2.      On September 8, 2021, the Prince George's County Police Department recovered a Smith & Wesson SD40, 9mm pistol, s/n FDC6464 in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on May 30, 2021, 101 days prior, in Texas.

3.      On December 4, 2021, the Prince George's County Police Department recovered a Glock 19, 9mm pistol, s/n BUNX681, in the possession of a relative of Jackson.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on September 20, 2021, 75 days prior, in Georgia.

4.      On December 27, 2021, MPD recovered a Springfield XDS, 9mm pistol, s/n BA343226, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on July 20, 2021, 160 days prior, in Georgia.

5.      On January 12, 2022, MPD recovered an FN 509, 9mm pistol, s/n GKS0206823, in the possession of an individual.   The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on July 12, 2021, 184 days prior, in Georgia.

6.      On January 27, 2022, the Prince George's County Police Department recovered a Glock 32, .357 SIG caliber pistol, s/n BVAY574, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on November 26, 2021, 62 days

prior, in Georgia.  However, Bournes Jr. was in possession of the firearm on January 10, 2022, 17 days prior to the recovery.[1]

7.    On January 31, 2022, the Montgomery County Police Department recovered a Glock 26, 9mm pistol, s/n AFSF626, from an abandoned vehicle.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on January 11, 2022, 20 days prior, in Georgia.

8.    On February 2, 2022, MPD recovered a Glock, model 17, 9mm pistol, s/n BUGR904 in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on November 12, 2021, 82 days prior, in Georgia.

9.    On February 13, 2022, MPD recovered a Glock 27, .40 caliber pistol, s/n BTZK866 in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on November 26, 2021, 79 days prior, in Georgia.

10.   On February 20, 2022, MPD recovered a Glock 32, .357 caliber pistol, s/n: BDWT284, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on December 4, 2021, 78 days prior, in Georgia.  **The National Integrated Ballistic Information Network ("NIBIN") revealed a hit indicating the firearm was used on January 31, 2022, in an unlawful discharge of a firearm.**

11.   On March 1, 2022, the Seat Pleasant Police Department, located in Prince George's County, Maryland, recovered a Ruger Security-9, 9mm pistol, s/n: 384-82393 in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on October 26, 2021, 126 days prior, in Georgia.

---

[1] Law enforcement's review of a Brookhaven, Georgia, Police Department report revealed that on December 6, 2021, Bournes Jr. was in possession of the Glock 32, .357 pistol, s/n BVAY574. The Brookhaven Police Department took custody of the firearm at that time for safekeeping.  Law enforcement spoke to a Brookhaven Police Department employee who stated that the firearm was released back to the custody of Bournes Jr. on January 10, 2022.

12.     Om March 17, 2022, MPD recovered a Glock 19, 9mm pistol, s/n: BUAP841, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by BOURNES JR. on October 31, 2021, 137 days prior, in Georgia.  **NIBIN revealed a hit indicating the firearm was used on December 12, 2021, in an unlawful discharge of a firearm.**

13.     On March 18, 2022, the California Highway Patrol recovered a Glock 23, .40 caliber pistol, s/n: BDNN697, in the residence of an individual, **in reference to a homicide investigation**.[2]  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on February 16, 2022, in Georgia.

14.     On March 23, 2022, the California Highway Patrol recovered a Glock 30, .45 caliber pistol, s/n: 1EPW970US, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on February 16, 2022, in Georgia.

15.     On March 25, 2022, MPD recovered a Glock 19, 9mm pistol, s/n: AFDL813, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on February 8, 2021, 410 days prior, in Texas.  **NIBIN revealed a hit indicating the firearm was used on March 5, 2021, in a unlawful discharge of a firearm in the District of Columbia.**

16.     On March 30, 2022, Prince George's County Police Department recovered a Glock 19, 9mm pistol, s/n: BSXL977, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on August 3, 2021, 239 days prior, in Georgia.

---

[2] The investigation was into the shooting death of a 23-month-old toddler who was caught in the crossfire of a gang shootout on interstate highway in Oakland, California.  The recovered gun was not used in that shooting but was recovered during the execution of a residential search warrant at the home of an individual who has ben charged in that homicide.  *See Three California gang members charged with murder in toddler's shooting death*, N.Y. Post (Dec. 15, 2022, 9:56 p.m.), https://nypost.com/2022/12/15/3-california-gang-members-charged-with-baby-jasper-wus-murder/

17.     On May 3, 2022, MPD recovered a Glock 19, 9mm pistol, s/n: BTXH373, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on September 20, 2021, 225 days prior, in Georgia.  **NIBIN revealed a hit indicating the firearm was used on March 22, 2022, in a shooting.**

18.     On June 11, 2022, the Prince George's County Police Department recovered a Taurus G3, 9mm pistol, s/n: ACD781281, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on May 30, 2021, 377 days prior, in Texas.

19.     On June 15, 2022, the Calvert County Sheriff's Office recovered a Glock 30, .45 caliber pistol, s/n: BVLN417, in the possession of an individual **during a homicide investigation**. The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on February 1, 2022, 134 days prior, in Georgia.

20.     On August 30, 2022, MPD recovered a Glock 19, 9mm pistol, s/n: BKCC860, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on November 24, 2021, 279 days prior, in Georgia.  **NIBIN revealed three hits indicating the firearm was used on June 11, 2022, in vandalism by gunfire; used on July 1, 2022, in a shooting; and used on August 15, 2022, in an unlawful discharge of a firearm.**

21.     On September 12, 2022, the Prince George's County Police Department recovered a Glock 23, .40 caliber pistol, s/n: BUWH673, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on November 27, 2021, 289 days prior, in Georgia.

22.     On October 6, 2022, MPD recovered a Glock 29, 10mm pistol, s/n: BUDD300, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained

by Jackson on September 3, 2021, 398 days prior, in Georgia.  **NIBIN revealed a hit indicating the firearm was used on February 5, 2022, in a shooting in Prince George's County.**

23.     On October 16, 2022, the Prince George's County Police Department recovered a Glock 44, .22 caliber pistol, s/n: AERY666, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on February 9, 2021, in Texas.

24.     On December 1, 2022, the Prince George's County Police Department recovered a Glock 23, .40 caliber pistol, s/n: BLLZ239, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on October 4, 2021, 423 days prior, in Georgia.

25.     On December 1, 2022, MPD recovered a Glock 43x, 9mm pistol, s/n: BUER314, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on September 6, 2021, 451 days prior, in Georgia.  **NIBIN revealed two hits indicating the firearm was used on February 21, 2022, and October 24, 2022, in unlawful discharges of a firearm in the District of Columbia.**

26.     On December 10, 2022, MPD recovered a Glock 19, 9mm pistol, s/n: BUAR602, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on November 16, 2021, 389 days prior, in Georgia.

27.     On February 2, 2023, the St. Mary's County Sheriff's Office recovered a Ruger 57, .57 caliber pistol, s/n: 643-39445, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on October 7, 2021, 483 days prior, in Georgia.

28.     On March 22, 2023, the U.S. Marshals Capital Regional Fugitive Task Force recovered a Ruger 57, .57 caliber pistol, s/n: 643-38382, in the possession of an individual.  The

Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on October 4, 2021, 534 days prior, in Georgia.

29.      On April 2, 2023, MPD recovered a Glock 43, 9mm pistol, s/n: AFET474, in the possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on February 8, 2021, 783 days prior, in Texas.[3]  **NIBIN revealed a hit indicating the firearm was used on March 12, 2023, in a shooting in the District of Columbia.**

30.      On May 16, 2023, the Roseville Police Department recovered a Springfield XDS, 9mm pistol, s/n: BA215744.  The Firearms Trace Summary indicated the firearm was obtained by Jackson on May 30, 2021, 716 days prior, in Texas.

31.      On July 18, 2023, MPD recovered a Glock 48, 9mm pistol, s/n: BVXR372, in possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by BOURNES JR. on January 15, 2022, 549 days prior, in Georgia.

32.      On July 27, 2023, MPD recovered a Glock 19, 9mm pistol, s/n: BUAU994, in possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on September 15, 2021, 680 days prior, in Georgia.  **NIBIN revealed the firearm was linked to *seven* incidents in the District of Columbia:  on August 12, 2022, and December 12, 2022, the firearm was used in the unlawful discharge of a firearm; on January 27, 2023, the firearm was used in a shooting; on January 30, 2023, the firearm was used in a shooting; on June 6, 2023, the firearm was used in a destruction of property and unlawful discharge of a firearm, as well as in an armed carjacking and shooting; and on July 27, 2023, the firearm was used in a shooting.**

_____

[3] Law enforcement was not aware that Jackson had purchased this firearm until after its recovery. It was not charged in this case.

33.     On July 27, 2023, the Prince George's County Police Department recovered a Glock 23, .40 caliber pistol, s/n: BUCV360, in possession of an individual.  The Firearms Trace Summary indicated the firearm was obtained by Bournes Jr. on November 1, 2021, 633 days prior, in Georgia.  **<u>NIBIN revealed a hit indicating the firearm was used on July 2, 2023, in an attempted murder in Prince George's County, Maryland.</u>**

34.     On October 19, 2023, MPD recovered a Glock 30, .45 caliber pistol, s/n: BUSW378, in possession of an individual.  The Firearm Trace Summary indicated the firearm was obtained by Bournes Jr. on January 21, 2022, 636 days prior, in Georgia.

To date, 49 of the firearms charged in this case remain on the street and unaccounted for.

## RELEVANT PROCEDURAL HISTORY

On March 9, 2023, a federal grand jury returned an Indictment charging Defendants Bournes Jr. and Jackson with one count of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371.  (ECF No. 1).  The defendants pleaded guilty to that sole count on October 5, 2023, pursuant to a negotiated plea agreement (ECF Nos. 40, 41).  Sentencing is scheduled for Monday, February 26, 2024, at 2:00 p.m.

## LEGAL STANDARD

Although the federal sentencing guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018).  The Supreme Court has noted that while the sentencing guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors.  *Gall v. United States*, 552 U.S. 38, 49–50 (2007).  The guidelines' recommended sentencing range will

ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

*Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in Section 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        (i) issued by the Sentencing Commission . . .; and
        (ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –
    (A) issued by the Sentencing Commission ... and
    (B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## SENTENCING GUIDELINES CALCULATION

The parties and Probation agree that the defendants' Final Offense Level is 17; that Defendant Bournes Jr. has six criminal history points (only four of which are counted) and is in Category III[4]; and that Defendant Jackson has one criminal history point and is in Criminal History Category I.   Defendant Bournes Jr.'s sentencing guidelines range is 30 to 37 months' imprisonment, and Defendant Jackson's sentencing guidelines range is 24 to 30 months' imprisonment.  The government's recommended sentences are within the guidelines.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

As discussed below, the Section 3553(a) factors support the government's recommended sentence of **30 months' imprisonment** to be followed by three years' supervision.

## I.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of this offense are serious and warrant significant, guidelines sentences.  The defendants purchased over 80 firearms under false pretenses and trafficked them to criminals for profit.  The harm of violent crimes involving guns is impossible to ignore because guns have been destroying our community every day and with increasing frequency.  In the past three years alone (between February 23, 2021, and February 23, 2024), the number of violent crimes committed with firearms went up by 2,592 when compared to the previous three years.

---

[4] In negotiating and drafting the plea agreement, the government mistakenly estimated that Defendant Bournes Jr. would be in Criminal History Category I.   In light of its error, the government has recommended that this Court sentence Defendant Bournes Jr. to a term of 30 months' imprisonment, which is the high-end of the guidelines range that corresponds to a Final Offense Level of 17 and a Criminal History Category of I.  Probation has noted that four of Defendant Bournes Jr.'s criminal history points are attributable to possessory marijuana convictions, which the sentencing guidelines suggest may warrant a downward departure from a defendant's criminal history category.  (ECF No. 52 ¶ 219 (citing application note 3(A)(ii) to USSG §4A1.3)).  The recommended sentence is within both the estimated and actual guidelines ranges.

*Crime Cards*, Metro. Police Dep't, https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited Feb. 23, 2024).   Similarly, the District's homicide rate has skyrocketed in recent years.   In 2023, while the homicide rate generally declined in other major American cities, the homicide rate in the District was at its highest level since 1997. *See* Emily Davies, *With two more killings, D.C. homicide toll this year is worst since 1997*, Wash. Post (Dec. 19, 2023, 5:42 p.m.), https://www.washingtonpost.com/dc-md-va/2023/12/19/with-two-more-killings-dc-homicide-toll-this-year-is-worst-since-1997/ ("The last time the District came close to this year's homicide toll was in 2002, when the city recorded 262 killings, according to police data.   In 1997, amid a period of municipal mismanagement and widespread social dysfunction, 302 people were killed in Washington.").   In 2023, there were 274 reported homicide, a 35% increase over the 203 homicides committed in 2022. *District Crime Data at a Glance: 2024 Year-to-Date Crime Comparison,* Metro. Police Dep't, https://mpdc.dc.gov/page/district-crime-data-glance (last visited Feb. 23, 2024).   Almost two months into the new year, there have already been 22 homicides, which is 9 fewer than this time last year but nevertheless a significant number. The evil posed by unlawful firearm possession cannot be overstated.

The defendants engaged in their firearms trafficking scheme amidst this uptick in gun violence and were necessary contributors to it, as they funneled over 80 firearms onto the streets, 31 of which have been recovered in this area (16 in the District of Columbia and 15 in Maryland) and three of which were recovered in California.   We know that firearms do not supernaturally appear in the hands of violent criminals.   Criminals obtain guns illegally because of the unfeeling actions of individuals who put profit and greed over the safety of the community.   Criminals want guns and are willing to pay a premium for them because they are lethal weapons that empower and embolden them to commit violent crimes.   Judges of this Court have repeatedly described firearms

23

possession as an inherently dangerous act that puts the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence").

Guns are inherently dangerous because they are designed to maim and kill other human beings, and criminals prize guns because their lethality empowers and emboldens them to commit violent crimes. The defendants had to have known that they were selling guns to criminals if for no other reason than that they were making a profit. And the harm directly attributable to Defendant Bournes Jr. and Jackson is not a matter of speculation. To date, 34 of the firearms they trafficked have been recovered by law enforcement. As outlined above, nine of those firearms were used in shootings—just one of those firearms was used in ***seven*** different crimes in the District of Columbia, including four shootings and an armed carjacking. Another gun was used in an attempted murder in Prince George's County. And two more were recovered during homicide investigations. What is perhaps most troubling is that at least 49 of the trafficked guns remain on the street—so the harm that those guns have already caused and will continue to cause remains unknown. That these guns would be used to commit violent crimes is something that was entirely foreseeable to the defendants. And yet they sold them anyway.

The defendants facilitated the unlawful possession of firearms many times over, with numerous of those firearms then used in the commission of violent crimes. The gravity of the

offense conduct cannot be overstated.  In view of the nature and circumstances of the offense, a guidelines sentence of **30 months' imprisonment** is warranted.

## II.    THE HISTORY AND CHARACTERISTICS OF THE DEFENDANTS

The defendants have minimal criminal history and no prior felony convictions.  While that fact may be considered a mitigating factor in some cases, in this case their lack of serious criminal history was essential to their ability to buy and traffic firearms:  they were able to walk into gun shops and acquire over 80 firearms under the false pretense of making lawful purchases.  They were able to earn a profit because many of their buyers are prohibited from purchasing firearms.  The defendants essentially weaponized their clean record to traffic guns to violent criminals.

The defendants were previously in a romantic relationship and appear to have had a history of domestic violence.  During the course of the conspiracy, in the summer of 2021, the defendants were wrestling over a gun when Defendant Jackson accidentally shot herself in the left leg.  Defendant Jackson told the presentence report writer that two bullets exited in her leg and that she was left with scars.  (ECF No. 54 ¶ 130).  It is remarkable that the defendants personally experienced the harmful effects of gun violence and yet continued to traffic firearms to criminals.

## III.    THE NEED FOR THE SENTENCE IMPOSED

As discussed above, the defendants' conduct in this case has put the community at grave risk.  The defendants put guns into the hands of criminals because they placed their own greed above the safety of the community.  Their conduct demands punishment.  A significant sentence is also necessary to deter others without criminal history from seeking to profit off of reselling firearms to violent criminals. The government's recommended guidelines sentence of 30 months' imprisonment thus serves the goals of sentencing.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that this Court sentence each defendant to a term of **30 months' imprisonment** to be followed by three years' supervised release.

<div style="margin-left:40%">

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

</div>

Dated: February 23, 2024    By:    */s/ Paul V. Courtney*
    Paul V. Courtney
    D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
    Assistant United States Attorney
    United States Attorney's Office
    for the District of Columbia
    601 D Street Northwest
    Washington, D.C. 20530
    (202) 252-1719
    Paul.Courtney@usdoj.gov